Rebecca J. Fortune (SBN 229921)
E-mail: Rebecca.Fortune@kts-law.com
**KIMBALL, TIREY & ST. JOHN LLP**
7676 Hazard Center Drive, Suite 900-B
San Diego, California 92108
Telephone: (619) 231-1422
Facsimile: (619) 234-7692

Attorneys for Defendant, JJJ ENTERPRISES, LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POSEIDON EXCURSIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JJJ ENTERPRISES, LTD., a California limited partnership,<br><br>Defendant. | Case No.: 12-CV-09162 (PJW)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT<br><br>Date: October 25, 2013<br>Time: 11:00 a.m.<br>Courtroom: 23 |

By and through its attorney of record, Defendant and Counter-claimant JJJ Enterprises, Ltd. ("JJJ Enterprises") respectfully submits this Memorandum of Points and Authorities in Support of its Opposition to Plaintiff Poseidon Excursions, Inc.'s Motion for Summary Judgment ("Motion").

## I.

## INTRODUCTION

Beginning in or about April 2006 and continuing through August 2010, the vessel at issue in this matter, the *Ocean Racer*, was moored at the Redondo Beach Marina.

During that time period, no monies were paid "by Poseidon Excursions, Inc., or any entity acting on its behalf to Redondo Beach Marina for the purpose of obtaining mooring, slip or dockage facilities from 2008-2011." (Statement of Genuine Issues in Opposition to Motion for Summary Judgment[1], ¶24). Nor did the vessel's then-current operator meet its rental commitments. As a result, the *Ocean Racer* became indebted to the Redondo Beach Marina in the sum of $70,917.70. Now, by way of this action, Plaintiff and Counter-defendant Poseidon Excursions, Inc. ("Poseidon") is attempting to avoid liability for its vessel's obligations. For the reasons stated below, must not be permitted to do so.

## II.

## STATEMENT OF RELEVANT FACTS

In the interest of brevity, this Statement of Relevant Facts will contain only those facts pertinent to this Court's current determination, e.g. did the vessel *Ocean Racer* incur a debt for a "necessary" as defined by the United States Code and its interpretive case law? However, JJJ Enterprises respectfully invites the Court's attention to its "Statement of Genuine Issues in Opposition to Motion for Summary Judgment" ("SIO") filed currently herewith for a more thorough recitation of foundational and disputed facts.

### A. The Debt.

On or about March 26, 2006, Counter-claimant's predecessor-in-interest entered into a Boat Operating Agreement with ESSENP Corporation dated January 15, 2006 (hereinafter "the Agreement") whereby JJJ Enterprises agreed to provide mooring facilities to the vessel *Ocean Racer*. (SIO ¶23). Under the Agreement, mooring facilities for the *Ocean Racer* were provided in exchange for an annual minimum rent of $90,000.00. (SIO ¶7). The minimum rent for mooring facilities was later reduced to $75,000.00 per annum. (SIO ¶11).

---

[1] Future references to Defendant's "Statement of Genuine Issues in Opposition to Motion for Summary Judgment" will be listed as "SIO" with paragraph (¶) numbers where appropriate.

Beginning in or about March 2008, the Ocean Racer's operator breached the Agreement by failing to timely pay the minimum rent due for calendar years 2008 and 2009 in the total amount of $31,335.00. (SIO ¶25). On March 2, 2010, Counter-claimant caused to be served on the *Ocean Racer*'s then-current operator a five (5) day written notice ("Notice") by certified mail in compliance with Paragraph 28 of Agreement. The Notice required and demanded that the *Ocean Racer* pay the amount owed or quit and deliver up possession of the Premises to JJJ Enterprises within five **(**5) days after the service of the Notice. (SIO ¶26). Pursuant to the Notice, an Unlawful Detainer Action was commenced against *Ocean Racer*'s operator and, on September 8, 2010, Judgment was entered in the sum of $70,917.70, representing past-due rents in the amount of $31,335.00, plus the additional amount of $39,582.70 reflecting the fair rental value of the property from March 2, 2010 through the date of the Court's ruling on the motion. (SIO ¶29). Because the Judgment reflected a debt owing related to the provision of mooring services by JJJ Enterprises, on October 25, 2010, Defendant and Counter-claimant caused a Notice of Claim of Lien to be recorded with the United States Coast Guard against the vessel *Ocean Racer*. (SIO ¶¶30, 32).

During the course of discovery in this matter, Poseidon confirmed the following fact essential to the Court's determination of Poseidon's Motion, i.e. "No monies have been paid by Poseidon Excursions, Inc., or any entity acting on its behalf, to Redondo Beach Marina for purposes of obtaining mooring, slip or dockage facilities from 2008-2011. (SIO ¶46);

**B. Control of *Ocean Racer*.**

At all times relevant to the *Ocean Racer*'s mooring at the Redondo Beach Marina, the President and CEO of Decron Properties Corporation, the managing agent for JJJ Enterprises believed that Michael Kim[2] was the primary contact for the vessel's operator,

---

[2] Mr. Kim submitted a Declaration in Support of Poseidon's Motion for Summary Judgment, identifying himself as Poseidon's "officer and general counsel".

then-identified as ESSENP Corporation. Mr. Kim represented himself to be responsible for paying rent for the *Ocean Racer* and, often times, delivered the rent himself. Given Mr. Kim's conduct, JJJ Enterprises never saw a distinction between ESSENP and Poseidon. (SIO ¶33).

When the underlying Unlawful Detainer action was in process and given the interconnected nature of Mr. Kim's involvement with the *Ocean Racer*, its operator ESSENP and its purported owner Poseidon, JJJ Enterprises looked into the corporate information for all aforementioned parties and discovered that all three (Kim, Poseidon and ESSENP) shared the same business office address, i.e. 3731 Wilshire Blvd, Suite 502, Los Angeles, California 90010. (SIO ¶¶34-36). Further, during the conduct of discovery in this matter, JJJ Enterprises also confirmed that Mr. Kim is the son of Poseidon's president, Jung C. Kim. (SIO ¶44). For the forgoing reasons, there is no practical distinction between ESSENP and Poseidon.

## III.

## LEGAL ANALYSIS

### A. The Ocean Racer's Debt is a "Necessary".

For the "law" on the issues to be decided on this Motion, the Court need look no farther than Poseidon's Motion at page 7, lines 13 through page 8, line 17,

> In furtherance of the longstanding legal fiction to the effect that the ship itself takes responsibility for its own debts, the holder of a maritime lien has 'the right to proceed in rem directly against the vessel' that is the fictional cause of the loss. Chugach Timber Corp. v. N. Stevedoring & Handling Corp. 23 F.3d 241, 245 (9th Cir. 1994); The Barnstable, 181 U.S. 464, 467 (1901) ["[T]he ship itself is to be treated in some sense as a principal, and as personally liable for the negligence of anyone who is lawfully in possession of her, whether as owner or charterer."]
>
> …
>
> Under the act, a lien may be asserted by any "person providing necessaries on the order of the owner or a person authorized by

> the owner." 46 U.S.C. § 31342(a). "Necessaries" are defined to include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. §31301(4). "Necessaries" thus generally extend only to services which facilitate the actual operation of ships. *See* Farwest Steel Corp. v. Barge Sea-Span 241, 769 F.2d 620, 623 (9th Cir. 1985)…Anchors and cables are generally considered to be necessaries…

Plaintiff even admits, "there's little question here that JJJ's provision of the dock space for the *Ocean Racer* did qualify as the right kind of 'necessary' within the contemplation of the act." (Motion, 9:9-10). Poseidon's only argument is that the debt incurred by *Ocean Racer* was not related to its receipt of mooring facilities and, instead, was the result of a profit sharing agreement. To resolve this issue, the Court need not engage in the lengthy and complex analysis found at pages 9-12 of Poseidon's Motion. Rather, it need only look to the written contract which provided the basis for the *Ocean Racer*'s occupancy at the Redondo Beach Marina, i.e. the Boat Operating Agreement. Indeed, Plaintiff's own Statement of Uncontroverted Facts admits that the annual "minimum rent" related to the Ocean Racer's mooring at the Redondo Beach Marina was initially $90,000.00, later reduced to $75,000.00. [emphasis added]. (SUF ¶11). JJJ Enterprises' agreement to deduct rent from the *Ocean Racer*'s ticket sales does not change the character of the payment – so long as JJJ Enterprises did not retain and/or claim funds in excess of the annual minimum listed in the Boat Operating Agreement – funds received and/or owed are still *rent* and, therefore, by Plaintiff's own admission, "the right kind of 'necessary' within the contemplation of the act." (Motion, 9:9-10).

**B. ESSENP's Bankruptcy is Irrelevant.**

Beginning at page 13, Poseidon discusses the *Ocean Racer*'s alleged operator ESSENP Corporation's bankruptcy and attempts to make the claim that the amount determined to be owing as rent, i.e. $70,917.70, should not be considered. This entire argument is irrelevant as ESSENP is neither a party to this action, nor did Plaintiff assert

any uncontroverted facts wherein the underlying debt was held to be invalid by the Los Angeles Superior Court.

This Court is not being asked to determine the validity of the Superior Court's Judgment. Rather, its focus is whether the *Ocean Racer* failed to pay JJJ Enterprises for a "necessary". And, on that issue, there is no doubt. Poseidon, in its own words, admits "No monies have been paid by Poseidon Excursions, Inc., or any entity acting on its behalf, to Redondo Beach Marina for purposes of obtaining mooring, slip or dockage facilities from 2008-2011." (SOI ¶46). Indeed, nowhere, not in its Complaint nor in any document submitted in connection with its pending Motion, does Poseidon ever deny owing the amount claimed by JJJ Enterprises.

**C. The Notice of Claim of Lien Was Timely Recorded.**

The amount of *Ocean Racer*'s rental debt was finally determined on September 8, 2010. (SOI ¶29). The Notice of Claim of Lien was recorded the very next month on October 25, 2010. (SOI ¶32). Furthermore, from October 2010 through the October 2012, Plaintiff failed to take any action whatsoever to either satisfy the lien or challenge its validity. As such, there is no basis for a claim of laches against Counter-claimant.

## IV.

## CONCLUSION

Despite Poseidon's attempt to muddy the proverbial waters with a discussion of profit sharing and joint ventures, it cannot deny two controlling facts: (1) the *Ocean Racer*'s operator agreed to pay minimum *rent* related to the mooring facilities provided by JJJ Enterprises and, (2) no one on behalf of *Ocean Racer* or Poseidon paid for such facilities from approximately 2008 through August 2010. As a result, JJJ Enterprises claim of maritime lien is totally appropriate and enforceable pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§31301-31343.

As a result of the facts and arguments contained herein and in all supporting papers filed concurrently herewith, Defendant and Counter-claimant respectfully requests that

this court find the amount listed in JJJ Enterprises' Notice of Claim of Lien to be a "necessary" and, on that basis, deny Poseidon's Motion for Summary Judgment in its entirety.

Respectfully submitted,

Dated: October 15, 2013

KIMBALL, TIREY & ST. JOHN LLP

*s/ Rebecca J. Fortune* .

Rebecca J. Fortune,
Attorney for Plaintiff, JJJ Enterprises, LTD